AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

APR 03 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. **18MJ1548**
Senwa Phone, Serial #: S301201603033361 )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-2

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B-2

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952 and 960 | Importation of a Controlled Substance |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FRANCISCO FAJARDO / Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/3/18

City and state: San Diego, CA

HON. JILL L. BURKHARDT
*Judge's signature*

_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS

I, Francisco Fajardo, Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. This affidavit supports an application for warrants to search the following items:

    a.    One ZTE Phone
            Model: Z899VL
            IMEI: 9900 0886 6688 125
            Serial Number: 32F477111268
            FCC ID: SRQ-Z799VL
            **(Target Device #1, described in Attachment A-1, incorporated by reference herein)**

    b.    One Senwa Phone
            Model: S301
            IMEI: 3577 9007 0334 607
            Serial Number: S301201603033361
            FCC ID: 2AAA6-S301
            **(Target Device #2, described in Attachment A-2, incorporated by reference herein)**

(collectively the **Target Devices**), which were seized from Cruz LOPEZ-SIERRAS (LOPEZ) on February 12, 2018, incident to his arrest for importation of methamphetamine at the Calexico, California (CA) East Port of Entry. I seek authority to search the Target Devices for evidence from September 4, 2017, through February 12, 2018 of crimes, specifically, violations of Title 21, United States Code, Section(s) 952 and 960, described more fully in Attachments B-1 and B-2, incorporated herein by reference. This search supports an investigation and prosecution of Cruz LOPEZ Sierras (LOPEZ) for the crimes mentioned above.

2. On February 12, 2018, LOPEZ entered the United States at the Calexico, California (CA) East Port of Entry as the driver and sole occupant of a 2011 Dodge

1

Avenger bearing California license plates 8AIX714 ("Dodge"). An examination of the Dodge revealed thirty-five (35) plastic bags weighing approximately 15.90 kilograms (35.05 pounds) of a crystal like substance that field tested positive for the properties of methamphetamine concealed inside the spare tire, located within the trunk compartment of the vehicle. Defendant was arrested on February 12, 2018, and charged in a criminal complaint with Importation of a Controlled Substance, a felony, in violation of Title 21, United States Code, Sections 952 and 960, Case No. 18MJ8283.

3. The **Target Devices** were seized on or about February 12, 2018, after Defendant's arrest at the Calexico, California East Port of Entry, by HSI Special Agent Francisco Fajardo. The **Target Devices** are currently held as evidence at the HSI – ASAC Calexico Evidence Vault located at 2051 Waterman Ave., Suite 100, El Centro, California 92243.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case.

5. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

**EXPERIENCE AND TRAINING**

6. I am a Special Agent employed with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been so employed since June 2016. Prior to my employment with HSI, I was employed as a Customs and Border Protection Officer with the United States Customs and Border Protection from September 2013 until June 2016. As a Custom and Border Protection Officer I became proficient in conducting vehicle searches and targeting vehicles for possible illegal smuggling of contraband and

narcotics. In my current position with HSI, my duties include investigating the trafficking of federally controlled substances. During my experience in law enforcement, I have had training in investigating the unlawful importation, possession, and distribution of controlled substances. My experience includes many arrests, searches, and interviews. I have also worked and consulted with many law enforcement officers experienced in narcotics smuggling investigations. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico through various land border ports of entry.

7. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and to enforce provisions of the Federal Controlled Substance Act, pursuant to Title 21 of the United States Code. I have participated in criminal investigations involving, among other things, the illegal smuggling of narcotics into the United States, and I have received formal training in the laws and regulations relating to such investigations including 21 U.S.C. §§ 952 and 960, Importation of a Controlled Substance. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

9. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and

experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a.    tending to indicate efforts to import methamphetamine or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11.    On February 12, 2018 at approximately 3:00pm, Cruz LOPEZ-Sierras, a Mexican national and a United States legal permanent resident, applied for entry at the Calexico, California (CA) East Port of Entry vehicle lanes. LOPEZ was the driver and sole occupant of 2011 Dodge Avenger bearing California license plates. Customs and

Border Protection Officer (CBPO) R. Lopez was conducting an enforcement operation in the vehicle primary lanes. CBPO Lopez targeted and selected LOPEZ due to the fact that he was a lone, male driver in a very clean vehicle. CBPO Lopez asked LOPEZ where he was going. LOPEZ stated he was going to a doctor's appointment in El Centro, CA. CBPO Lopez acquired a negative Customs declaration from LOPEZ and referred him to be screened by the z-portal x-ray machine. At approximately 3:03pm, CBPO R. Garcia scanned LOPEZ's white, 2011 Dodge Avenger and noticed anomalies in the spare tire located in the trunk of the vehicle. At approximately 3:30pm a Canine Enforcement Officer and his K-9 screened the spare tire that was located in the trunk of LOPEZ's vehicle. The K-9 alerted to the spare tire.

12. CBPO J. Sandoval was informed of the anomalies found in the spare tire. CBPO asked LOPEZ where he was going. CBPO Sandoval asked LOPEZ if the vehicle belonged to him and he replied yes. LOPEZ stated he was going to an appointment with Doctor Ann in El Centro, CA. CBPO Sandoval received a negative Customs declaration from LOPEZ. LOPEZ was escorted to vehicle secondary office for a pat-down, which yielded negative results. Upon inspection of the vehicle, CBPO officers found 35 plastic bags with a crystal like substance inside the spare tire. The total weight of the substance was 15.90 kilograms (35.05 pounds). The crystal like substance was field tested and tested positive for properties of methamphetamine. Defendant was arrested on February 12, 2018, and charged in a criminal complaint with Importation of a Controlled Substance, a felony, in violation of Title 21, United States Code, Sections 952 and 960, Case No. 18MJ8283.

13. During the post-arrest interview, LOPEZ positively identified two cell phones belonging to him: a ZTE cell phone and a Senwa cell phone. The two cell phones were seized by HSI Special Agents. LOPEZ was asked where the phones were when CBP arrested him; LOPEZ stated his cell phones were in the car with him.

14. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that the **Target Devices** were used to

coordinate the importation of methamphetamine into the United States. In addition, I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices** may identify the persons involved in narcotics trafficking activities, including LOPEZ. Furthermore, it is likely the **Target Devices** may contain incriminating information pertaining to the smuggling event. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of LOPEZ, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, deleted messages/data, pictures and other digital information are stored in the memory of the **Target Devices**.

15. Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional experience, this requires planning and coordination in the weeks and often months prior to the event. This planning often includes coordination on crossing the border to develop a crossing history or pattern. A review of LOPEZ's crossing records shows crossings in the 2011 Dodge Avenger used to transport the methamphetamine. Specifically, LOPEZ has crossed in the Dodge eleven (11) times between October 5, 2017 and February 12, 2018. As noted previously, the methamphetamine was concealed within the spare tire of the vehicle. State of California Department of Motor Vehicles records reveal that LOPEZ registered the Dodge on September 18, 2017. Based on my professional experience, drug smugglers often coordinate with their co-conspirators to arrange for the purchase of the vehicles used to transport the drugs. Given this, I respectfully request permission to search the **Target Devices** for items listed in Attachments B-1 and B-2 beginning on **September 4, 2017** (one month before his Lopez's first crossing in the Dodge Avenger), up to and including **February 12, 2018**.

## METHODOLOGY

16. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the subject cellular/mobile telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

//
//

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

19. Based on all of the facts and circumstances described above, there is probable cause to conclude that the **Target Devices** were used to facilitate violations of Title 21, United States Code, Section(s) 952 and 960, and that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 and B-2.

20. Because the **Target Devices** were seized during the investigation of LOPEZ's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by LOPEZ's continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from February 12, 2018.

21. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and the seizure of items listed in Attachments B-1 and B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Francisco Fajardo
Special Agent

Subscribed and sworn to before me this 3rd day of April, 2018.

The Honorable Jill L. Burkhardt
United States Magistrate Judge

9

# ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

>One Senwa Phone
>Model: S301
>IMEI: 3577 9007 0334 607
>Serial Number: S3012016030333361
>FCC ID: 2AAA6-S301
>
>**(Target Device #2)**

**Target Device #2** is currently held as evidence at the HSI-ASAC Calexico Evidence Vault located at 2051 N. Waterman Ave., Suite 100, El Centro, CA 92243.

## ATTACHMENT B-2
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 4, 2017, up to and including February 12, 2018.

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.